UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
12-13-07
CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:07-cr-67-J-TEM

THOMPSON BROS. REALTY, INC.

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, THOMPSON BROS. REALTY, INC., and the attorneys for the defendant, Charles P. Pillans, III and O. David Barksdale, mutually agree as follows:

**A.  Particularized Terms**

   1.  Count(s) Pleading To

   The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with taking, molesting or disturbing a bald eagle, in violation of 16 U.S.C. § 668(a) and 50 C.F.R. § 22.3.

   2.  Maximum Penalties

   Count One carries a maximum sentence of five years probation, a fine of $200,000, or twice the pecuniary gain derived from the offense, and a special assessment of $125.

Defendant's Initials _____                              AF Approval _____

3. <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense with which the defendant has been charged and to which the defendant is pleading guilty. The elements of Count One are:

<u>First</u>: That the defendant, acting through its agent(s) or employee(s), did disturb a bald eagle;

<u>Second</u>: That the defendant's agent(s) or employee(s) did so knowingly, or with wanton disregard for the consequences of their actions; and

<u>Third</u>: That the defendant had no permit from the United States Department of the Interior allowing it to disturb a bald eagle.

4. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, relating to the conduct giving rise to this plea agreement..

5. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court,

Defendant's Initials _PJT_                2

neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

6.   Upward Departure

The United States recommends to the Court that in sentencing the defendant the Court not depart upward from the applicable sentencing guideline range. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7.   Parties Joint Recommendation Regarding Fine

The parties jointly recommend that, in lieu of a monetary fine, the Court Order the defendant to place a conservation easement in perpetuity on approximately 15.10 acres of wetlands property owned by the defendant. The property is located to the East and South of Fish Island in St. Johns County, Florida, in the Middle District of Florida, and is more particularly identified by a survey prepared on October 16, 2007 which bears the seal of Florida Coastal Surveyors, Inc., a Florida licensed surveyor and mapper. This property has an estimated value in the range of between $71,181.40 and $143,887.90. The parties submit that the recommended conservation easement is the practical equivalent of a monetary fine, but that it has the added value of preserving land in its natural condition in perpetuity. The defendant understands that this joint recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials ____    3

8.  <u>Corporate Defendant</u>

The undersigned corporate officer or representative of the defendant hereby certifies that he is authorized by the defendant corporation to act on its behalf, to plead guilty to the charge alleged in the Information, and to enter into this plea agreement, and that, if necessary, a corporate resolution so empowering said officer or representative has been duly made and approved by said corporation. Said defendant corporation either has implemented or will, by the time of sentencing, implement an effective program to prevent and detect violations of law, which program shall require the exercise of due diligence. The defendant corporation further agrees that such a program may be made a special condition of probation, should the Court determine that a sentence of probation is appropriate.

**B.  Standard Terms and Conditions**

1.  <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court,

Defendant's Initials _PT_          4

and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

Defendant's Initials _PJT_            5

3. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

4. Defendant's Waiver of Right to Appeal and
<u>Right to Collaterally Challenge the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence

Defendant's Initials _PP_   6

exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

5. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

6. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

7. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature

Defendant's Initials _PT_                7

of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

8. Factual Basis

The defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that the defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and that,

Defendant's Initials _PJ?_    8

were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

9.  Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

10. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 13th day of December, 2007.


THOMPSON BROS. REALTY, INC.  
Defendant

By: _____  
Name  

Vice President  
Title  

_____  
CHARLES P. PILLANS, III  
Attorney for Defendant  

_____  
O. DAVID BARKSDALE  
Attorney for Defendant

ROBERT E. O'NEILL  
United States Attorney  

By: _____  
JOHN J. SCIORTINO  
Assistant United States Attorney  

_____  
RONALD T. HENRY  
Assistant United States Attorney  
Deputy Chief, Jacksonville Division

Defendant's Initials _____     9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:07-cr-67-J-~~32TEM~~ TEM

THOMPSON BROS. REALTY, INC.

_____

## PERSONALIZATION OF ELEMENTS

1. On October 8, 2001, did THOMPSON BROS. REALTY, INC., in St. Augustine, St. Johns County, within the Middle District of Florida, acting through its agent(s) or employee(s), disturb a bald eagle?

2. Did the defendant's agent(s) or employee(s) do so knowingly, or with wanton disregard for the consequences of their actions?

3. Do you acknowledge that the defendant had no permit from the United States Department of the Interior allowing it to disturb a bald eagle?

Defendant's Initials ___         10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:07-cr-67-J-TEM

THOMPSON BROS. REALTY, INC.

_____

## FACTUAL BASIS

Bald eagles mate for life. The breeding season in the part of Florida relevant to the pending Information is from October 1 to May 15. The eagles arrive in or about October, start working on their nests, and lay eggs. The eggs hatch in or about December, and the parent eagles feed and take care of their "fledglings" in the nest until around May. Then the eagles fly north for the Summer. Bald eagles like to return to the same nest in the same tree year after year. Eagles prefer to nest in live trees, but they will nest in a dead tree if it is the same tree they nested in the year before. The presence of bald eagles can have adverse economic implications for an owner wishing to develop land. An eagle management plan must be approved and followed which can curtail construction activities, especially during the breeding season.

Fish Island, actually a peninsula, is a 20-acre property in St. Augustine, St. Johns County, within the Middle District of Florida. At all times relevant to the pending Information, defendant THOMPSON BROS. REALTY, INC. owned fifty percent of Fish Island. At all times relevant to the pending Information, the land was in main part undeveloped, with (among other natural features) large, original growth pine trees.

Defendant's Initials ___

During the 2000-2001 bald eagle breeding season, a pair of bald eagles nested in a pine tree on Fish Island and bred healthy fledgling eagles. In February 2001, the owners of THOMPSON BROS. REALTY, INC. were informed of and shown photographs of the nest. In the Spring of 2001, the owners of THOMPSON BROS. REALTY, INC. were again informed of the nest. In March or April 2001, near the end of the breeding season, the eagles left the nest. Thereafter, the nest disappeared, probably by natural atrophy. In June or July 2001, lightning struck and killed the pine tree in which the bald eagles had nested, but the tree remained standing.

In September 2001, the bald eagle pair returned to Fish Island. On October 3, 2001, the owners of defendant THOMPSON BROS. REALTY, INC. were informed that the bald eagles had returned to the pine tree. On October 6 and 8, the bald eagles were observed bringing nesting materials back into the pine tree. Defendant THOMPSON BROS. REALTY, INC., acting through its agent(s) or employee(s), hired men to cut down a number of dead pine trees, starting with that specific pine tree. The men felled the pine tree on October 8, 2001.

Defendant THOMPSON BROS. REALTY, INC. acknowledges that cutting down the pine tree after the start of the nesting season disturbed the bald eagles. In fact, on October 9, 2001, the bald eagle pair was observed and photographed flying around felled tree with nesting materials. However, the disturbance was temporary. The bald eagle pair thereafter built a nest in another, live pine tree on Fish Island and bred healthy fledgling eagles that breeding season. During that breeding season, Thompson Bros. Realty, Inc. hired an environmental services company to provide daily monitoring to assure the eagles would breed and flourish. The cost of that monitoring program to Thompson Bros. Realty, Inc. during that successful breeding season was approximately

Defendant's Initials _____        2

$76,000. In subsequent years, Thompson Bros. Realty, Inc. also engaged an environmental company to monitor the nest, at an additional cost of approximately $2,000.

Because the bald eagles successfully re-nested in a nearby tree, defendant THOMPSON BROS. REALTY, INC. ultimately enjoyed no pecuniary gain from cutting down the dead pine tree.

Defendant's Initials _PT_                              3

## CERTIFICATE OF RESOLUTION
## OF
## THOMPSON BROS. REALTY, INC.

I HEREBY CERTIFY that on December 12, 2007 a duly constituted special meeting of the Board of Directors of Thompson Bros. Realty, Inc., a Florida corporation (the "Corporation"), at which a quorum of Directors was present, was held and the following resolutions were duly adopted and are now in full force and effect:

RESOLVED, that the Corporation is hereby authorized to enter a plea of Guilty in the United States of America vs. Thompson Bros. Realty, Inc., Case No. 3:07-cr-67-J-33-TEM in accordance with the plea agreement negotiated by the attorney for the Corporation, Bedell, Dittmar, DeVault, Pillans and Coxe, P.A. and the United States Attorneys' Office ("Plea Agreement"); and

RESOLVED, further, that the Vice-President of the Corporation is hereby authorized to execute and deliver such documents, including the Plea Agreement, a conservation easement encumbering certain lands of the Corporation, and take all such other actions as may be necessary to effect and carry out the terms of the Plea Agreement; and

RESOLVED, further, that the Vice-President of the Corporation be and is hereby authorized to certify to the Court the foregoing resolutions, that the provisions thereof are in conformity with the charter and bylaws of the Corporation and that the foregoing powers and authority will continue until written notice of revocation has been delivered to the Court.

I FURTHER CERTIFY that I am the duly elected Vice-President of the Corporation and have been duly appointed and am presently serving in that capacity in accordance with the bylaws of the Corporation and that there is no provision in the charter or bylaws of the Corporation limiting the power of the Board of Directors to pass the foregoing resolutions, that the same are in conformity with the provisions of said charter and bylaws and are duly recorded in the minute book of the Corporation.

IN WITNESS WHEREOF, I have subscribed my signature to this certificate and affixed the seal of the Corporation.

_____
Paul J. Thompson Its Vice-President

Dated: __12-13__, 2007                    *(CORPORATE SEAL)*